[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO STRIKE
The plaintiff, Elmer L. Odell, Jr., originally brought this action against the Episcopal Diocese of Connecticut and Camp Washington, Incorporated, his former employers, in eight counts. The defendants filed a motion to strike counts one (breach of express contract), two (breach of implied contract), three (breach of the covenant of good faith and fair dealing), five (violation of General Statutes, § 31-71 a et seq.), six (intentional infliction of emotional distress), seven (negligent infliction of emotional distress) and eight (defamation) to which the plaintiff filed a timely objection. Following oral argument, in a supplemental memorandum, the plaintiff agreed to withdraw, without prejudice, counts one, three, six and eight. Remaining before the court then is the defendants' motion to strike counts two, five and seven, sounding in breach of implied contract, violation of General Statutes § 31-71 a et seq. and negligent infliction of emotional distress, respectively.
The complaint alleges the following facts: The plaintiff, Elmer L. Odell, Jr., was an employee of the Episcopal Diocese of Connecticut and its subsidiary, Camp Washington, Incorporated, from May 5, 1986 until April 8, 1998, when he was summarily terminated. He began working for the defendants in May 1986, part-time, earning a weekly wage and medical, dental and housing benefits. In September 1987, he became a full time employee. He was named Food Service Manager effective September 1, 1991. The plaintiffs acceptance of that position was confirmed in a letter from the defendants to him dated December 3, 1991. His housing benefit was valued at $9,000 in the text of that document. In a memorandum dated July CT Page 10493 28, 1994, the defendants modified their vacation and sick leave policy which had the effect of eliminating the accumulated vacation and sick time for those employees who became employed prior to 1993. In or about 1997, the plaintiff received a copy of the "All Saints Conference Center/Camp Washington Personnel Policies." In response to the plaintiffs request, in a memorandum dated October 31, 1997, the defendants provided a detailed statement of his salary package showing the value of the plaintiffs housing benefit as $5,000. The plaintiff was terminated on April 8, 1998, and told to vacate his housing within ten days.
"The purpose of a motion to strike is to contest, the legal sufficiency of the allegations of any complaint. . . . In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autori, 236 Conn. 820,825, 676 A.2d 357 (1996). "The role of the trial court [in ruling on a motion to strike is] to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [plaintiff has] stated a legally sufficient cause of action." Napoletano v. Cigna Healthcare ofConnecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127 (1996). The court must "take the facts to be those alleged in the complaint . . . and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency." Sherwood v. Danbury Hospital, 252 Conn. 193,212-213, ___ A.2d ___ (2000). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted.) Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 296 (1998). A motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Doe v. Yale University, 252 Conn. 641, 694, ___ A.2d ___ (2000).
In support of their motion to strike, the defendants argue that count two of the plaintiffs complaint fails to properly allege the existence of an implied contract for employment or a breach thereof.
"[A]ll employer-employee relationships not governed by express contracts involve some type of implied `contract' of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working." Gaudio v. Griffin HealthServices Corp. 249 Conn. 523, 532, 733 A.2d 197 (1999).
The facts alleged by the plaintiff are sufficient to support his claim that there existed an implied contract of some kind between the plaintiff and the defendants governing their employment relationship of over twelve years. "A contract implied in fact, like an express contract, depends on actual agreement." (Internal quotation marks omitted.) Coelho v.CT Page 10494Posi-Seal International, Inc., 208 Conn. 106, 111, 544 A.2d 170 (1988). "[T]he plaintiff had the burden of proving by a fair preponderance of the evidence that the [defendants] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [him]." Burnham v. Karl Gelb. P.C., 50 Conn. App. 385, 388, 717 A.2d 811
(1998). "Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 13, 662 A.2d 89 (1995).
The court finds that the letter dated December 3, 1991, attached as Exhibit A to the plaintiffs complaint, and referenced in detail therein, has wording that, when considered in a light most favorable to the plaintiff, can be interpreted as an intent by the defendants to form an agreement to the terms thereof, e.g., "If this agreement is satisfactory to you, please sign below and return the original to me." (Emphasis added.) (Plaintiff's Exhibit A). The plaintiff alleges that "[t]he terms of the agreement included [inter alia] monetary compensation, housing, family health and dental insurance benefits. . . ." (Complaint, p. 14, paragraph 63). The plaintiff further alleges, in considerable factual detail, a breach of those terms.[1] In particular, the plaintiff claims that the letter of December 3, 1991, valued his on-site housing at $9,000 (Complaint, p. 3, paragraph 13), which value was reduced by $4,000 in the letter of October 31, 1997 (Complaint, p. 7, paragraphs 33-37).
Since the court finds that the plaintiff has alleged facts sufficient to support the allegations of the existence of an implied contract and a breach thereof, the motion to strike count two is denied.
The defendants have moved to strike count five on the grounds that the plaintiff failed to plead bad faith, arbitrariness or unreasonableness.
"When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive. . . . such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action." General Statutes, § 31-72.
"Although the statutory language does not require evidence of bad faith, arbitrariness or unreasonableness, cases interpreting and applying this statute have required such evidence." Butler v. Hartford TechnicalInstitute, Inc., 243 Conn. 454, 470, 704 A.2d 222 (1997). CT Page 10495
The plaintiff alleges that he was expected to work overtime and that he did, in fact, work more than forty hours per week. The plaintiff further alleges that the value of the on-site housing, which constituted part of his overall compensation package, was reduced. A reasonable implication from these allegations is that such conduct was unreasonable, arbitrary or in bad faith. See Pamela B. v. Ment, supra, 244 Conn. 308. Therefore, the defendants' motion to strike count five is denied.
"[I]n order to state . . . a claim [for negligent infliction of emotional distress], the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. . . . [N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corporation, 243 Conn. 66,88-89, 700 A.2d 655 (1997).
The plaintiff alleges that "[t]he diocese and the Camp knew or should have known that emotional distress was a foreseeable result of their conduct" (Complaint, p. 25, paragraph 63) and that "the Plaintiff has suffered, and continues to suffer, serious emotional distress . . . "(Complaint, p. 25, paragraph 64). Such allegations, without supporting factual allegations, are mere legal conclusions and are not admitted for the purpose of determining a motion to strike. See Doe v. YaleUniversity, supra, 252 Conn. 694. Since the plaintiff has failed to alleged facts which support a claim of unreasonable conduct of the defendant in the termination process, his allegations are insufficient to sustain a claim of negligent infliction of emotional distress. The defendants' motion to strike count seven is therefore granted.
Peck, J.